GEORGE A. BAUGHER v. GAMBLE CONSTRUCTION COMPANY, Appellant. —26 S. W. (2d) 946.

Division Two, April 7, 1930.

*W. E. Moser* and *Hensley, Allen & Marsalek* for appellant.

*Mark D. Eagleton* and *William L. Mason* for respondent.

1238

DAVIS, C.—This is an action for damages for personal injuries suffered by plaintiff while in the employ of defendant. The jury returned a verdict for $25,000 in favor of plaintiff, and defendant appealed from the judgment entered on the verdict.

The evidence adduced on the part of plaintiff warrants the finding that on December 7, 1925, defendant was engaged in erecting and constructing, on the campus of Washington University in St. Louis County, a building to be used for athletic exercises known as a Field House. Plaintiff was in the employ of defendant, doing carpenter work, and had been in its employ for a year and a half. Another carpenter, Mathews, and a helper, Doudy, worked regularly with him. The planned height of the Field House was approximately forty-five feet from the ground to the roof. The general nature of plaintiff's work was that of clamping columns. A column was a form constructed of lumber into which concrete was poured. Inside the column was a steel girder. At the time of plaintiff's injury he was working about forty feet above the ground on a column at the northeast corner of the structure. This column or form had been constructed, except clamping it, on Friday prior to his injury, which occurred on Monday. The dimensions of this column were fifty-four by thirty-six inches approximately. The lumber or boards, used to construct the columns, were reinforced by clamps or collars of 4x4 lumber. The first clamp was nailed on the column at a height of

six inches from the bottom thereof. Other clamps above it were nailed on the column at interspaces of twenty-four inches. The ends of the 4x4 braces, at every fourth clamp, would extend from two feet to thirty inches beyond the column. These extensions were used to support a scaffold board on which men would stand while constructing the column. In addition to nailing on the clamps, they were reinforced with a number 9 steel wire, which bounded the clamp. The wire was thus used to strengthen the clamp and to prevent the column from spreading on pouring concrete in it, as well as to prevent the clamp from slipping and to provide greater security for the scaffold board on which the men would stand. Just prior to the time plaintiff fell, a scaffold board, a piece of lumber 2x8, extending from east to west, had been laid across the clamp extensions. Plaintiff had nothing to do with the nailing or wiring of the 4x4 clamps on which the scaffold board was placed, nor did he place the scaffold board, which sagged and caused him to fall, on the clamp extensions. Mathews, while plaintiff was doing other work, nailed and wired this particular clamp. Plaintiff did not think he was there at that time. He could not say who placed the scaffold board on the extensions, but he had nothing to do with placing it there. Plaintiff had mounted the scaffold board and had been standing there about a minute when it sagged and he fell. At that time he was boring a hole in the column, about six feet above the scaffold board, through which to insert wires to pull the column back into position. While thus standing on the scaffold board, the east side of it sagged down and threw him to the ground. He said the scaffold board gave way, while he was boring the hole, and he fell. The fall broke plaintiff's back and resulted in paralysis from his chest downwards.

On cross-examination, plaintiff testified that, during the two months he worked on the Field House, he and Mathews worked together as carpenter partners, and Doudy was their helper. Practically all the work they did was constructing the forms or columns. Two men and a helper worked in the construction of a column. Plaintiff and Mathews, as carpenters, worked together on columns. Some times other laborers would help Doudy get material. Plaintiff took his orders from a certain foreman, and plaintiff, Mathews and Doudy worked under the same foreman. In building the columns, both plaintiff and other employees would do whatever was necessary to do at the particular time. As they happened to get to it, either plaintiff or Mathews nailed on the extensions or wired them. Plaintiff that morning worked on the column around the steel brace and Mathews put on the clamps. Plaintiff also helped Doudy take up material with a rope and pulley. The last work he did before he started boring was to land some 4x4 clamps that were pulled up. He did not see the board give way, but felt it.

On redirect examination, he said that the work done on the Friday previous had nothing to do with the board he stood upon. The work related to putting up the sides of the column.

Doudy, for defendant, testified that plaintiff placed his right foot on another clamp higher than the scaffold board, and, as that clamp was only nailed, it gave way, causing plaintiff to fall. Plaintiff drove one nail in that clamp. On cross-examination, he testified that the east end of the 4x4, on which the scaffold board rested, sagged down, and plaintiff fell to the east.

Defendant's evidence further tends to show that Mathews and Doudy, immediately prior to the sagging thereof, stood on the scaffold board, but they had stepped off before it gave way. The wire used on the clamps was inferior wire, in that it stretched more than the ordinary number 9 steel wire. About a week before the accident plaintiff and Mathews advised the superintendent that the wire used on a certain column stretched more than wire ordinarily does. Defendant's witness Mathews, referring to the clamp that sagged and caused plaintiff to fall, said: "There is no doubt in my mind but that that wire stretched until it permitted that 4x4 to sag down; all that is left is the nails to hold it. The purpose of the wire was to keep it in its position; and to keep the columns from spreading." Other relevant facts, if any, will be adverted to in the opinion.

I. In order first to dispose of a matter that has not been adequately preserved, we consider the complaint of defendant that the court erred in refusing to sustain its motion to make the petition more definite and certain. A motion to make more definite and certain must be preserved by a bill of exceptions. However, in addition to incorporating the matter in a bill of exceptions, the losing party must also complain of the matter in his motion for a new trial. While the bill of exceptions was sufficient for that purpose, the motion for a new trial failed to charge that the trial court erred in overruling defendant's motion to make the petition more definite and certain. Consequently the matter is not before us. [Syz v. Milk Wagon Drivers' Union, 18 S. W. (2d) 441, l. c. 443.]

II. It is averred that the court erred in refusing to sustain defendant's demurrer to plaintiff's petition. The germane portion of the petition reads:

"Plaintiff by leave of court first had and obtained, files this his first amended petition, and for cause of action states that defendant is now and was at all times herein mentioned a corporation

duly organized and existing under and by virtue of law, and as such was at all times engaged in the business of building and constructing and was engaged in building and constructing a building known as the Field House for the Washington University at or near Pennsylvania Avenue and Forsythe Boulevard in St. Louis County, Missouri.

"Plaintiff further states that on or about the 7th day of December, 1925, he was in the employ of the defendant and while working within the line and scope of his employment for said defendant, he was assisting in the erection of a building or structure then and there being used in connection with the construction of said Field House as aforesaid. And plaintiff further states that while thus engaged in his duties as aforesaid he was working upon a scaffold or structure used in the erection of said building, and that while working upon said scaffold or structure the said scaffold or structure did sag down causing plaintiff to lose his balance and to be thrown from said scaffold or structure to the ground below, and to be seriously and permanently injured as hereinafter more particularly set forth, all of which occurred through negligence and carelessness on the part of said defendant.

"And plaintiff states that by reason and on account of the aforesaid negligence and carelessness on the part of the defendant he was seriously and permanently injured in this, to-wit."

The argument of defendant runs: "As a general rule, no presumption of negligence on the part of the employer arises from the mere fact of injury to an employee. The burden is on the employee to set forth in his petition the alleged negligent act or omission to which he attributes his injury. The amended petition does not allege facts sufficient to take the case out of the foregoing rule; it does not allege that the scaffold or structure, upon which plaintiff was working, was furnished or provided by defendant. . . . The allegations of the petition are not sufficient to invoke the *res ipsa loquitur* doctrine in plaintiff's favor. The rule applies under the scaffolding statute, only when the scaffold is furnished by the employer as a completed instrumentality." The defendant further argues that the *res ipsa loquitur* doctrine requires the pleading of the surrounding facts concerning the unusual event; that the petition must develop that the instrumentality was under the master's control, as well as that the plaintiff is unable to show what produced the unusual occurrence. Moverover, that the allegation that the sagging of the scaffold occurred through the negligence of defendant states no fact, but a mere legal conclusion, which cannot be considered in determining the sufficiency of the petition.

The petition was demurred to on the ground that it failed to state a cause of action against defendant. By answering over, de-

fendant did not waive the failure of the petition to state a cause of action. That question is always open to review, even on appeal. [Hanson v. Neal, 215 Mo. 256, 114 S. W. 1073.] But, notwithstanding defendant filed a demurrer to the petition, when it answered over, it waived all defects in the petition, saving that the petition did not state facts sufficient to constitute a cause of action and jurisdiction of the subject-matter. [Ashton v. Penfield, 233 Mo. 391, 1. c. 417, 135 S. W. 938; Hanson v. Neal, 215 Mo. 256, 114 S. W. 1073.] The general rule obtains that, in determining the sufficiency of the petition after verdict and judgment, we must indulge every reasonable intendment in favor of the petition. [Hamilton v. Standard Oil Co., 19 S. W. (2d) 679, 1. c. 683.] Thus, a petition does not wholly fail to state a cause of action because of a lack of certainty or a lack of definiteness in allegation, nor for informality in the statement of an essential fact, nor because a cause of action is defectively stated. It is said by LAMM, J., in Ice & Cold Storage Co. v. Kuhlmann, 238 Mo. 685, 1. c. 702, 142 S. W. 253: ''Such objection is disallowed if by reasonable intendment, or by fair implication from facts stated, or if by most liberal construction the essential allegation may be got at by inference.'' In Heckfuss v. American Packing Co., 224 S. W. 99, where a demurrer to the petition was filed and based on the ground that it failed to state a cause of action, which was overruled, defendant thereupon answering over, the St. Louis Court of Appeals held that the matter must be treated as though no demurrer had been filed. The Heckfuss case was here considered on certiorari. [State ex rel. Packing Co. v. Reynolds, 287 Mo. 697, 1. c. 707, 230 S. W. 642.] In that case this court said, in considering the effect of answering over after a demurrer to the evidence has been overruled, that cases in this State hold that, ''If a defendant pleads to the merits, he waives everything in the petition but two points: First—That the petition does not state facts sufficient to constitute a cause of action; Second—That the court has no jurisdiction over the subject-matter of the action. This is axiomatic.'' See also on this point: Syz v. Milk Wagon Driver's Union, 18 S. W. (2d) 441, 1. c. 443; Buckman v. Bankers' Mtg. Co., 263 S. W. 1046.

Generally, we see no reason to depart from the rule that, by answering over after demurrer, the defendant waives the effect of the demurrer, except as to the two cardinal defects noted. However, situations may arise where the overruling of a demurrer injures a defendant by hampering him or preventing him from interposing adequately his defense. But, apparently that is not the situation here. We are unable to see that the overruling of the demurrer injured defendant or hampered it in its defense. Moreover, the demurrer was general and while it was sufficient in form, it failed to set forth specifically the objection now interposed. It may be that defendant laid behind an ambush. Furthermore, defendant permitted

without objection the evidence that other employees of defendant erected the scaffold and used defective wire furnished by it. It is said in Erwin v. Collum Commerce Co., 204 S. W. 820, l. c. 821, that "the absence of a demurrer only permits 'a more liberal construction' of the petition after an answer." [Anderson v. Lusk, 202 S. W. 304.]

Even applying the rule that, on demurrer, a petition is not to be construed as liberally as in the absence of a demurrer, still we think the petition states what may be said to be a defective statement of a cause of action. It is true that it does not aver expressly that defendant furnished the scaffold or controlled it. Nevertheless it avers generally that defendant was negligent. The petition otherwise avers that defendant was engaged in erecting a certain building and that plaintiff, while in its employ and working in the scope of his employment on a scaffold used in the erection of said building, was caused to lose his balance and to be thrown and injured by the sagging of the scaffold. These averments, in connection with the averment that the occurrences were caused by defendant's negligence, justifies the inference and implication that defendant furnished and controlled the scaffold. A statement of a defective cause of action may not be regarded as a failure to state a cause of action. [State ex rel. Smith v. Trimble, 315 Mo. 166, 285 S. W. 729.] A reversal of the judgment and a remanding of the cause on the ground urged would permit an amendment of the petition averring that which the evidence here adduced tends to show. We are unable to see that defendant was surprised or injured in the defense of its case. The point is disallowed.

III. It is said that a demurrer to the evidence should have been given, because the evidence shows with certainty that the clamp extensions and scaffold board laid across them were constructed and placed thereon by plaintiff or his fellow-servants. However, inasmuch as there is a ground upon which the judgment can be sustained, we need not decide that plaintiff's injuries were caused by the acts of fellow-servants, although there is authority seemingly upholding the position taken by defendant. [Williams v. Ransom, 234 Mo. 55, 136 S. W. 349.]

The petition was based upon the doctrine *res ipsa loquitur*. Both the petition and the facts justified the application of the doctrine. [Prapuolenis v. Const. Co., 279 Mo. 358, 213 S. W. 792.] We have held in many cases that, where a defendant refuses to stand on a demurrer to the evidence at the close of plaintiff's case, and introduces evidence in its own behalf, all the evidence adduced is reviewable, that of defendant as well as that of plaintiff, to determine whether the facts sustain a verdict and judgment for plaintiff.

[Anderson v. Davis, 284 S. W. 439; Smith v. Railroad, 9 S. W. (2d) 939.] There was evidence that the scaffold sagged, thus throwing plaintiff to the ground below. The evidence of plaintiff does not tend to show the cause of the sagging. It is true that plaintiff's fellow-servants constructed the extensions and placed the scaffold board across them, but plaintiff's evidence does not show whether the injuries occurred as the result of the fellow-servants' construction of the work and the selection of the material, or from material with latent defects furnished by the master. What caused the scaffold board to sag? The work and selection of materials by plaintiff's fellow-servants or materials with latent defects furnished by defendant? Plaintiff's evidence shows nothing as to the cause of the scaffold board sagging. The sagging may have been caused by the workmanship of plaintiff's fellow-servants and their selection of the material, or it may have been caused by material with latent defects furnished by the master, and without a duty on the part of the fellow-servants to discover the latent defect. The evidence justified the drawing of either inference. Consequently defendant's negligence, pursuant to the applicability of the doctrine *res ipsa loquitur,* became a jury question. The effect of the doctrine is tersely stated in Sweeney v. Erving, 228 U. S. 233 l. c. 240, 33 Sup. Ct. 416, 418, 57 L. Ed. 815, Ann. Cas. 1914 D, 905, reading: "In our opinion, *res ipsa loquitur* means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. *Res ipsa loquitur,* where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is, whether the preponderance is with the plaintiff."

Defendant's evidence tends to show that the fall of plaintiff was not caused by the sagging of the scaffold, but by the giving away of a 4x4 piece of timber on the east side that plaintiff had placed his foot on. This was defendant's theory of defense as shown by its instruction given. On cross-examination of its witnesses defendant's evidence further tends to show that defendant furnished a number-nine wire which was used in binding the collars or clamps on the columns and which was tightened to prevent the column forms from spreading when cement was poured therein. About a week prior to the accident, a column into which cement had been poured spread, and defendant's superintendent investigated the matter. He was then told by plaintiff and Mathews that the wire used was rubber

wire, and that the column could not be held with it. This wire was the only wire furnished. The wire had never gone down under the weight of a man. One purpose of the wire was to hold the clamps in position. They termed it rubber wire because it stretched more than the other wire. Mathews testified without objection: "There is no doubt in my mind but that that wire stretched until it permitted that 4x4 to sag down; all that is left is the nails to hold it."

The cause of action was based on the doctrine *res ipsa loquitur*, and the plaintiff was entitled to the benefit of any evidence that defendant, in explanation of the accident, adduced. According to defendant's evidence, it acquired information, about two weeks previous to the accident, that the wire stretched. It may be inferred from defendant's evidence that, upon receiving information that the wire was "stretchy," the superintendent gave plaintiff and Mathews to understand that the wire was sufficient. This lulled them into a sense of security, for they could rely upon the superior knowledge of the master. We think that defendant's evidence clearly tends to show that it furnished material with a latent defect, which was negligence and the proximate cause of plaintiff's injuries. Mathews testified that there was no doubt in his mind that the wire stretched until it permitted the sagging. No objection of any kind was interposed to the statement. The evidence developed that, a week or so previous, the No. 9 wire used to strengthen the clamps stretched more than ordinarily, so as to permit, when concrete was poured in, the bulging of the columns. It may be inferred that the wire that was used to bind the clamp that supported the scaffold came from the same batch of wire that was used on the column that bulged, for there is no showing that other No. 9 wire was furnished. The foregoing constituted substantive evidence sufficient to support the verdict and judgment.

The judgment is affirmed. *Henwood* and *Cooley, CC.,* concur.

PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted as the opinion of the court. All of the judges concur.