NEVA J. MORRIS, Appellant, v. HENRY HANSSEN, Trustee, SAMUEL MAYER, FLORENCE DEAN and FRANK YEOMAN.—78 S. W. (2d) 87.

Division One, December 21, 1934.

*Marley & Marley* for appellant.

*John B. Gage* and *Carson E. Cowherd* for Hanssen, as Trustee.

*Louis A. Laughlin* and *Frank Yeoman* for respondents.

STURGIS, C.—This is a suit in equity by which plaintiff asks the court to set aside and cancel for fraud certain conveyances and particularly certain deeds of trust as constituting a cloud on her title to a tract of improved real estate in Kansas City designated as Lots 75 and 100, Prospect Vista. The trial court, after hearing the evidence, concluded that plaintiff had misconceived her remedy and without deciding whether such conveyances should be set aside for fraud as prayed, entered judgment dismissing plaintiff's bill and awarding costs against her for the reason that she had an adequate remedy at law. Such is the judgment from which plaintiff has appealed.

The facts as disclosed by the pleadings and evidence are in substance these: The chief controversy is between plaintiff and her former husband, Frank Yeoman, who will be referred to as the defendant unless someone else is so designated. They were married in January, 1921, and divorced May 30, 1930. Plaintiff's maiden name was restored and she brought this suit in August, 1931. Her ex-husband, the defendant Frank Yeoman, was a lawyer and real estate man. She became acquainted with him as an attorney and business adviser. Before their marriage plaintiff had some means of her own and her mother, whose business she largely looked after, had a considerable estate. Defendant was her attorney and business adviser and this relation existed at the time of their marriage and continued till shortly before their divorce, plaintiff continuing to pay her hus-

band the usual fees for his advice and services. In January, 1923, defendant became the owner of the property in controversy, the legal title being held for him by a law student in his office, Claude A. Beard. The property was then encumbered by a deed of trust for $2000 placed thereon by a former owner. Defendant, in January, 1924, proposed to this plaintiff, his then wife, that she purchase or take over this property by paying and discharging the $2000 deed of trust against the same, which was then about due, and use the same as a home for her mother as well as themselves. She testified positively that defendant told her that this deed of trust was all that was against the property and all that she would have to pay—that on paying off this deed of trust she would own it free and clear of any encumbrance. She futher testified that she thought the legal title was in defendant instead of in his law clerk, Beard, and that he was to make the deed to her. She accepted the proposition and gave defendant a check for $2000 with which to pay off and discharge the deed of trust. Defendant then took up this secured note and had the deed of trust canceled and released of record on February 28, 1924. What the defendant had in fact then done, however, was to cause Beard, the holder of the legal title, to execute a second deed of trust on this property dated January 29, 1923, to secure a note for $1000 and defendant was then using said note as collateral security at the Produce Exchange Bank. He also caused Beard, who held the legal title, to execute and deliver to him a warranty deed of the same date as the second mortgage with the name of the grantee left blank and defendant held this deed unrecorded till over a year later. This deed recited that it was made subject to both the deeds of trust mentioned. The defendant, on his wife's agreeing to take over this property and pay the $2000 encumbrance thereon, inserted plaintiff's name as grantee in the warranty deed he held from Beard and put it of record February 20, 1924, without plaintiff ever having seen it. In this manner plaintiff became the owner of this property and, having paid off the $2000 encumbrance, believed she owned it free and clear of any encumbrance. Plaintiff and defendant, her husband, and plaintiff's mother, who really furnished the money to pay off the $2000 encumbrance, moved into this property and made it their home. Plaintiff says that she asked defendant, her husband, for her deed to this property soon after she paid the $2000 and he assured her that it was on record and that her title was clear and he would get the deed from the recorder's office for her; that he kept assuring her that her title was all right and that he would get the deed for her when he could think of it, etc.; that about the time of their separation in 1929 she went to his office and demanded her papers, including the deed to this property, and that defendant then gave her the canceled note for $2000 which she had paid and some other papers but declared that he could not find her deed. As a matter of fact, the warranty deed ex-

ecuted in blank by Beard was more than a year old when defendant inserted plaintiff's name as grantee and had it recorded, so that same had remained in the recorder's office for a year after recording. It is quite certain that plaintiff never saw this deed till at this trial when defendant got it from the recorder's office and produced it. The most that defendant claims is that he "told her all about it" and that she knew he had about $1000 invested in this property. When her divorce was granted plaintiff was not living in this property but had it rented. When she went to collect her rent some two months later her tenant informed her that another person had notified him that he had purchased this property at a foreclosure sale and was entitled to the rent. Plaintiff then had the title investigated and ascertained for the first time, as she says, that defendant, through his "straw man" Beard, had placed a second deed of trust on this property prior to its being deeded to plaintiff, using the secured note as collateral, and shortly after the divorce was granted defendant had caused the trustee in this deed of trust, defendant Hanssen, to foreclose same and sell the property thereunder. While the defendant had kept the interest paid on his own note to the bank, no interest had been paid on the secured note put up by him as collateral. In other words, defendant had been holding and using as collateral security at his bank this note for $1000 dated January 29, 1923, and secured by a deed of trust on this property in question which he had caused to be deeded to his wife, this plaintiff. Plaintiff was not paying and had never been called on to pay the interest on this note as she says she knew nothing about it, so that apparently there was about seven years' interest past due and unpaid. Defendant says he concluded to increase his loan at the bank and to do so was required to increase his collateral, and to do this he requested the trustee to foreclose the deed of trust, intending, as he did do, to buy in the property he had deeded to his wife under what was apparently then a first deed of trust. The foreclosure took place as soon as practical after plaintiff was divorced from defendant and at such foreclosure sale defendant caused his friend, the defendant Samuel Mayer, to buy it in for him and a trustee's deed was accordingly made to Mayer. There is no question but that plaintiff knew nothing of this foreclosure sale and took no steps to protect her property. But if, as defendant says, he had "told her all about it" and if the deed to her was made subject to this deed of trust, she would have to take constructive notice of the foreclosure. Such is defendant's contention. Immediately after the foreclosure sale and trustee's deed to Mayer, defendant caused him to execute a note for $1500 and a deed of trust on the property to secure the same payable to another friend Bush, who indorsed the note without recourse to defendant, and defendant pledged it as collateral security to his bank for a loan of a like amount, paying off the old $1000 note against

the same property. This bank, the Produce Exchange Bank, though not made a party to this suit, claims to be the legal holder of this $1500 secured note as an innocent purchaser for value before maturity and without notice of any fraud or wrongdoing in connection therewith. It also appears that defendant caused Mayer, who purchased the property for him and executed the secured note and deed of trust for $1500, to convey the property to Florence Dean, a "straw woman," subject to the $1500 deed of trust placed thereon by him for defendant's use. Defendant then caused Florence Dean to execute a note and deed of trust on the property for $2500 in favor of a fictitious payee and defendant concedes that this was done at his instance and for his benefit and that he owns and controls this secured note.

The plaintiff by her petition asks that the following conveyances of this property be set aside and declared void as to her:

1. The deed of trust for $1000 executed by Claude A. Beard, who held the title for defendant Frank Yeoman, to Henry Hanssen, trustee, dated January 29, 1923.

2. The trustee's deed, in foreclosure of the foregoing deed of trust, from Henry Hanssen, trustee, to Samuel Mayer, who purchased for defendant, dated July 1, 1930.

3. The deed of trust executed by Samuel Mayer for defendant's use to Henry Hanssen, trustee, to secure the note for $1500 dated July 1, 1930. This note is held by the Produce Exchange Bank as collateral security for defendant's note of like amount.

4. The warranty deed of Samuel Mayer to defendant Florence Dean subject to the last-mentioned deed of trust, dated July —, 1930.

5. The deed of trust of Florence Dean to Henry Hanssen, trustee, for $2500 to secure a note to a fictitious payee, made for the use and benefit of and indorsed to defendant and held by him, dated July —, 1930.

Plaintiff does not ask that the secured notes be canceled or held void but that the deeds of trust be canceled of record as being a cloud on her title.

The defendants Henry Hanssen, trustee in the deeds of trust, and Samuel Mayer and Florence Dean answered separately by general denial. Defendant Frank Yeoman answered stating some not material facts as to the origin of his title and admitting that he took title in the name of Claude A. Beard subject to a deed of trust for $2000; that he caused Beard to execute the second deed of trust for $1000, which he had used as collateral security with the Produce Exchange Bank; that Beard then executed and delivered to plaintiff a warranty deed in blank subject to the two deeds of trust mentioned which defendant later completed by inserting the name of plaintiff, his then wife, as grantee and had same recorded; that plaintiff paid off the first deed

of trust, but defendant denies that she was not then aware of the true condition of the title.

It will be noticed, as stated, that the trial court did not pass on the question of these conveyances being fraudulent and void as to plaintiff's title, but after hearing the evidence dismissed plaintiff's case for the reason that same is one in equity and that under the pleadings and evidence the plaintiff has an adequate remedy at law. In this we think the trial court was clearly in error. It is one of the ancient and unquestioned equity powers of courts to set aside and cancel deeds of trust and other like conveyances procured by and tainted with fraud. Such power is vested exclusively in courts of equity. "The jurisdiction of a court of equity, or of a court exercising the powers of a court of equity, to direct and to enforce the rescission of contracts and the surrender and cancellation of written instruments for due cause and to grant such other relief as the party may be entitled to, is settled beyond question. It is in fact an ancient head of equity jurisdiction. . . . Furthermore, although the facts which are the occasion of the equitable remedy of cancellation are usually grounds for some legal action or defense, cancellation is properly classed in the exclusive jurisdiction of equity, since it is a remedy which equity courts alone are able to confer. Nor is this rule changed by a statute which authorizes equitable defenses to be interposed in actions at law." [9 C. J. 1159, 1160.]' In 3 Black on Rescission and Cancellation (2 Ed.), section 643, page 1553, this is said: "Courts of equity have jurisdiction to grant relief, by way of rescission or cancellation, against contracts or conveyances procured by means of deception, fraudulent concealment, false representations, or fraud in any of its other forms or manifestations. This jurisdiction is sometimes said to be concurrent with that of the courts of law. That is to say, fraud is a species of tort, which may lay a foundation for an action at law, in which compensation is claimed by way of damages. But this does not exclude the wider jurisdiction of equity, under which a fraudulent transaction may be unraveled, the contract or transfer completely undone, and the parties restored to their former position." And in Section 646, page 1561, this same author says: "The general opinion is that where a party is induced to enter into a contract by fraud or false representations, he has an absolute right to have it rescinded, and that though the facts may be such as would sustain a common-law action for fraud and deceit, and though he may, if he chooses, elect to pursue that course, he cannot be compelled to do so, and the existence of such a remedy at law is no ground for dismissing his suit in equity."

The courts of this State are committed to the doctrine that courts of equity have inherent jurisdiction and power to establish or destroy deeds or deeds of trust as muniments of title to real estate when the action is based on fraud. There cannot be in the very nature of things

an adequate remedy at law as a substitute for such an action in equity. Hanson v. Neal, 215 Mo. 256, 114 S. W. 1073, was a suit by the owner of notes secured by deed of trust on land to set aside the fraudulent foreclosure of same and consequent trustee's deed to the purchaser and to reinstate the deed of trust as a valid security for the debt. As to such a suit, this court said: ''The averments of fact in her petition showed she had no adequate remedy at law. That was enough. · Why allege she had no adequate remedy at law when her bill showed it? The present solvency of Keith (maker of the notes) was no remedy coming up to the high-water mark of the rules laid down, therefore it was not necessary to allege his insolvency. . . . The authorities point out that there are cases alone cognizable in equity and with which the law has nothing whatever to do. The jurisdiction of equity is said to be exclusive in such cases. Then there is a class of cases in which the jurisdiction of equity is concurrent with that of courts of law. Then another class in which equity has jurisdiction because of the inadequacy of the remedy at law, and still others in which the chancery side of this court is invoked in aid of an existing remedy at law. The case at bar naturally falls in that class of which equity alone has jurisdiction.'' [21 C. J. 111.]

. ▆▆▆ . It seems to have been conceded that plaintiff's petition stated a good cause of action in equity and does not show on its face at least that plaintiff has an adequate remedy at law. If it does so show, a demurrer should have been interposed and that was not done. Nor did the defendants by their answers interpose the defense that plaintiff has a complete and adequate remedy at law and much less did they point out what or the nature of what remedy at law available to plaintiff is so complete and adequate as to bar the action in equity. It is not apparent from the record when or how the point was raised in the trial court that plaintiff could not prevail in her equity action because of having an adequate remedy at law. In the arguments and briefs filed here by defendants the trial court's action in this respect is sought to be justified on the theory that an action at law for damages against defendant Yeoman would lie and afford plaintiff an adequate remedy at law and that it was neither alleged nor proved that Yeoman is insolvent. Defendant says that this is the theory on which the trial court dismissed plaintiff's suit. We need not discuss whether or not or on what theory defendant might be held liable in damages on the facts alleged and proved. It may be, as defendants contend, that defendant is liable in a suit at law for ''negligence or misconduct'' of defendant as plaintiff's attorney or agent or husband, but it does not follow that such an action would be adequate and equally effective as the action in equity. A suit and judgment for damages, even against a defendant solvent at the time, is by no means as adequate and effectual in a legal sense as would be the decree prayed for in this action. A landowner who has been fraudulently deprived of his land

directly and completely by a fraudulent deed or indirectly and partially by deed of trust thereon cannot be compelled to accept satisfaction for the wrong done by a mere money judgment against the wrongdoer who is able to prove his solvency. In Hanson v. Neal, supra, the plaintiff was wrongfully deprived of the deed of trust security on land which she had on certain promissory notes and she sought by her suit in equity to have such security restored. The question was raised whether plaintiff could maintain the equitable action without alleging and proving that the maker of the secured notes was insolvent for otherwise a judgment on the notes would be equally adequate. As to this the court said: "It is contended there are several vital omissions in the bill. To our minds, the only serious one is the failure to allege the insolvency of the maker of the notes secured by the deed of trust. Counsel stoutly argues such omission is equivalent to an admission that plaintiff has an adequate remedy at law. He says that if the maker of the notes was solvent, so that the residuum of the debt could be collected by a suit at law on the notes, plaintiff is not entitled to have the breath of life breathed into her exhausted and defunct deed of trust by setting aside the sale and the deeds following it and, in effect, reinvesting into the trustee the legal title to the lands for the purposes of a landed security. Is this position sound? To my mind, No. . . . This is not a suit to collect the secured notes. It is a suit to re-establish the lien of a deed of trust exhausted and lost by an unfair and wrongful sale. In other words, the result to be attained is to vest out of appellants and into the trustee (where it once was) the legal title to 1,360 acres of land, to be held as security for a debt due plaintiff. What legal remedy would plaintiff have to that end? None that I know of. . . . The plaintiff started out with two remedies. She was entitled to both even in a case of solvency. Why should she lose either? One of them was a suit, a judgment, a fi. fa., and sale. This remedy might be adequate or might not. No court can peer into the future and see whether it would collect her debt. Verily, the vicissitudes of fortune are sharp and incessant and riches take wings and fly away! Who may know what a day will bring forth in that regard? Her other remedy lay on another road. She had a certain, continuous, permanent security on land—good for the future, free from the ups and downs of fickle fortune. The legal title to that land was put in a trustee for her use. Armed with that security she could realize on her notes by foreclosure sale or by a transfer of the paper to an indorsee. Disarmed of that security, it is beyond the ken of any earthly court to know whether she would recover a penny, though her debtor be technically solvent at the moment of trial. To say that the present solvency of the maker of the notes affords her an adequate, plain, complete remedy at law, attaining (in the language of the books) to the full end and justice of the case, reaching the whole

mischief and securing her whole right, in a perfect manner, at the present time and in the future, is judicial nonsense in my opinion.'' The case of Lime & Cement Co. v. Citizens Bank, 158 Mo. 272, 59 S. W. 109, was a suit in equity to subject a fund in the treasury of the city of St. Louis to the payment of claims for material furnished by the Lime & Cement Company to a contractor. A contractor's bond was outstanding, giving a remedy at law. It was contended that there was an adequate remedy at law by a suit against third parties, to-wit, the sureties on the bond, precisely as it is contended here, that there is an adequate remedy at law by suit for damages against defendant Yeoman. In disallowing that contention this court used language in point and said: ''The first point advanced by appellant is that the plaintiff has no right to maintain this suit in equity because it has an adequate remedy at law on the bond executed by the construction company to the city. The rule that equity will not grant relief where there is an adequate remedy at law applies only when on the case stated there is a legal remedy. . . . If on the facts stated the case is of a nature cognizable only in a court of equity the plaintiff will not be shut out of that court on the suggestion that on another state of facts he might recover that which would be equally satisfactory in another tribunal. If one has a mortgage on certain land for his debt, equity will not refuse to hear his suit for a foreclosure upon the suggestion that his debtor is solvent and the debt can be collected through a judgment and execution at law. If the right asserted is a subject of original equity jurisdiction the court will entertain it even though there may be a remedy at law. [Stewart v. Caldwell, 54 Mo. 536; Pratt v. Clark, 57 Mo. 189; Real Estate Sav. Inst. v. Collonious, 63 Mo. 290; Story's Eq. Juris., sec. 80.] And the fact that a plaintiff may have a remedy by suit at law against a third person, as in this case against the surety on the bond, is no ground for refusing relief in equity. [Roll v. Smelting Co., 52 Mo. App. 60.] The right which the plaintiff seeks to establish in this suit is in its nature such as can be established only in a court of equity.'' To the same general effect is Pocoke v. Peterson, 256 Mo. 501, 518, 165 S. W. 1017; Schwab v. City of St. Louis, 310 Mo. 116, 124, 274 S. W. 1058; Anable v. Land & Mining Co., 144 Mo. App. 303, 314, 128 S. W. 38; Roberts v. Central Lead Co., 95 Mo. App. 581, 596, 69 S. W. 630. In McGhee v. Bell, 170 Mo. 121, 134, 70 S. W. 493, a suit to set aside a deed of trust obtained by fraud and false representations, this court said: ''We hold that the positive and actual fraud by which the plaintiffs were overreached and induced to make a deed of trust on their lands, entitles them to the protection of a court of equity, and to a remedial decree which a court of law could not give them under the circumstances, to adjust the equitable compensation for defects and remove the cloud of the fraudulently acquired mortgage. We have no hesitancy in saying that the fraud of defendant and the entanglements

of plaintiff resulting therefrom fully justified the circuit court in retaining the bill and adjusting the equities between the parties.

"The fraud of defendant is one of the recognized heads of equity jurisdiction, and the specific redress to which plaintiffs are entitled by the setting aside of the deed of trust and adjusting the balance actually due plaintiffs and removing the cloud of the fraudulent deed of trust was and is not attainable in a simple action at law for damages since in a court of law rescission *pro tanto* and equitable compensation are not recognized and hence there is a prerogative jurisdiction in equity to relieve them, and a court of equity having once acquired jurisdiction will retain it to do complete justice." In 3 Black on Rescission and Cancellation (2 Ed.), section 649, page 1565, this is said: "Where a clear case for rescission is made out, as. one based on fraud or false representations, the question of the solvency or insolvency of the defendant is of no consequence as affecting the right of the complainant to have the aid of a court of equity."

 In this case it is not clear but the inference is that plaintiff was in possession of the property in question through her tenant when this action was commenced. If so, she could not avail herself of an action in ejectment or other similar purely legal action. Nor did plaintiff have the legal title to this property. Her title was under the deed from Beard which was on its face made subject to the fraudulent deed of trust which defendant had caused Beard to execute, and the foreclosure of that deed of trust cut out plaintiff's legal title and vested the same in defendant Mayer and by his deed in defendant Florence Dean, who holds same for defendant Yeoman. Plaintiff, therefore, does not fall under the rule that one having the legal title and not in possession must first sue in ejectment before he can maintain an equitable suit to cancel a conveyance for fraud. [Graves v. Ewart, 99 Mo. 13, 11 S. W. 971.] And if plaintiff has only equitable title, whether she is in possession or not, she can maintain her suit in equity to set aside for fraud the deeds of trust constituting clouds on her title or the deeds constituting barriers in the pathway of asserting her title. [21 C. J. 115; Peters v. Berkemeier, 184 Mo. 393, 83 S. W. 747; Mason v. Black, 87 Mo. 329, 344.]

 One of the distinct grounds of equity jurisdiction for which there is no adequate remedy at law is to cancel and remove deeds or deeds of trust constituting a cloud on the plaintiff's title to real estate. 9 C. J. 1189; 3 Black on Rescission and Cancellation (2 Ed.), sec. 651, page 1568; Pocoke v. Peterson, 256 Mo. 501, 519, 165 S. W. 1017, where the court said: "But that doctrine (adequate remedy at law) is not applied where the life of the bill is to remove a hurtful cloud upon a land title; for equity has exclusive jurisdiction in that behalf." Loewenstein v. Insurance Co., 227 Mo. 100, 122, 127 S. W. 72; Schwab v. City of St. Louis, 310 Mo. 116, 125, 274 S. W. 1058,

182

where it is said that "equity has exclusive jurisdiction to remove a hurtful cloud upon a land title."

We cannot agree to defendant's contention that as plaintiff had abundant time and opportunity to ascertain the status of her title to this property and to know of the deeds of trust and trustee's deed which she seeks to have canceled, she ought not to be heard to say that her first knowledge of same came to her shortly before this suit was commenced. The argument is that these conveyances were on record in the recorder's office and that plaintiff had no right to accept as true her husband's statements that the land was free of encumbrances except the deed of trust for $2000 which she paid and discharged. This argument loses sight of the fact that a relation of trust and confidence existed between these parties both on account of defendant being plaintiff's husband and also being her attorney and business adviser. When such fiduciary relations exist, the law not only imposes on the one party the duty of not merely refraining from making any misrepresentations but also of fully disclosing all the material information such party possesses; and the law excuses the other party from seeking information from any other source. Plaintiff was not required, as against the defendant, to search the public records to ascertain the status of her title or to keep track of such title and no defense can be predicated on her failure so to do. [Cottrill v. Crum, 100 Mo. 397, 404, 13 S. W. 753; McGhee v. Bell, 170 Mo. 121, 135, 70 S. W. 493; Severson v. Kock, 159 Iowa, 343; Hartley v. Frederick, 191 Ala. 175, 180.] It should also be remembered in this connection that the deed from defendant's office clerk Beard to plaintiff, which recited that it was subject to the deed of trust to secure the note for $1000, which has caused all this trouble, was not recorded promptly by defendant but was retained for more than a year before recording and was then retained by the recorder for a year longer and was never exhibited to plaintiff till this suit was on trial, and during all that time defendant was promising plaintiff to get this deed for her and was making excuses for not doing so, thus lulling her into security. Plaintiff, under the facts here, cannot be defeated in this action for her trusting defendant as to her title being free and clear.

Defendant also makes the point that as plaintiff derives title from the Beard deed to her and such deed recites that it is subject to a deed of trust for $1000, as well as a prior deed of trust for $2000, she cannot repudiate the validity of that instrument. Defendant invokes the rule of law stated in 2 Herman on Estoppel and Res Judicata, page 1156, and quoted in Fox v. Windes, 127 Mo. 502, 512, that "no man can be permitted to claim inconsistent rights with regard to the same subject, and that anyone who claims under an instrument, is bound to give full effect to that instrument as far as he can." In other words, "one who claims under a deed confirms all its provisions, and cannot establish his claim by adopting only those

provisions which are in his favor, while he repudiates or contradicts others that are repugnant to his interests." [18 C. J. 215.] This rule, however, has its exceptions and presupposes that the deed or other instrument under which plaintiff claims has been voluntarily accepted with knowledge or at least inexcusable ignorance of all its provisions, and does not apply when fraud has been used to have the grantee accept the conveyance without knowledge of the insertion of the objectionable condition. Thus in 18 Corpus Juris, 226 (cited by defendant), the law is stated thus: "So, a person may not plead ignorance of the covenants of a deed executed to him after it has been accepted and recorded, as a ground for defeating the force and effect of such covenants, *in the absence of any fraud practiced by the grantor preventing the grantee* from familiarizing himself with the deed, particularly where a considerable time has elapsed." The reason for the rule is stated in Fuller v. Devolld, 144 Mo. App. 93, 128 S. W. 1011 (also cited by defendant), thus: "Now the law is that when land is conveyed by warranty deed subject to an encumbrance, it becomes a charge on the land, and while the grantee does not become personally liable, the land becomes a primary fund for the payment of the debt. (Cases cited.) In such case the encumbrance is *taken into consideration by the purchaser* in agreeing upon the purchase price; and the fact that the land is to be charged with its payment reduces the price he pays to the grantor. (Cases cited.) And for this reason the grantee is not allowed to dispute the validity of the encumbrance. (Cases cited.)" In the present case, however, the evidence shows that in fixing the price which plaintiff was to pay for this property, to-wit, $2000, to discharge the first deed of trust, she did not take into consideration that she would have to pay the other deed of trust for $1000 as that was concealed from her and she was told that on paying the first deed of trust the land would be free and clear of encumbrance. It is that fraud and misrepresentation which is the basis of plaintiff's present cause of action.

We are holding that plaintiff is entitled to relief in equity along the line prayed for in her petition, but the evidence shows that the Produce Exchange Bank of Kansas City holds as collateral security the note of defendant Mayer for $1500 secured by deed of trust. Mayer purchased the property at the foreclosure sale under the deed of trust, fraudulent as to plaintiff, executed by defendant's law clerk Beard for his benefit. Such fraud was not disclosed by the record title and the evidence is that neither Mayer, who was purchasing and executing the deed of trust for defendant's benefit, nor the Produce Exchange Bank, which took the note as collateral security, had any knowledge of the fraud practiced by defendant. "The relief of cancellation will not be granted against a bona fide purchaser for value and without notice of the fraud or other ground for cancellation.

This rule applies irrespective of the grounds on which the rescission or cancellation is sought." [9 C. J. 1222; Mayes v. Robinson, 93 Mo. 114, 123, 5 S. W. 611.]

In this connection it should be pointed out that the Produce Exchange Bank is not made a party defendant in this action as it should have been. [9 C. J. 1230; Crawford v. Aultman & Co., 139 Mo. 262, 272, 40 S. W. 952; Voorhis v. Gamble, 6 Mo. App. 1.] No objection, however, was made on this ground and at the trial the trustee in the deed of trust raised the question of the Produce Exchange Bank being an innocent purchaser and entitled to protection as such. As the case must be reversed and remanded, that bank, if still interested, should be made a party and be protected in its lien unless it takes the position that it has an adequate remedy at law by suit on defendant's personal note.

The trial court as a court of equity, having acquired jurisdiction of this cause and the parties, will not stop short of determining all the issues and doing complete justice. To do this it may be necessary to take an accounting of the rents and profits of this property and to whom paid and also of the necessary expenditures in preserving the property.

We also think that on the authority of Woolum v. Tarpley (Mo.), 196 S. W. 1127, and Buckingham v. Williams (Mo. App.), 9 S. W. (2d) 839, the court should determine the amount due the Produce Exchange Bank as a bona fide purchaser of the secured Mayer note for $1500 held by it as collateral security and enter a personal judgment for plaintiff against defendant Frank Yeoman for such amount. If the bank occupies the position of an innocent purchaser of the Mayer secured note for $1500, its rights are to be determined with reference to that note and it is not material to inquire into the extent or amount of protection the bank was entitled to when occupying a like position with reference to the Beard deed of trust for $1000.

The result is that the case is reversed and remanded with directions to the trial court to proceed in accordance with this opinion. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All the judges concur.