STATE OF MISSOURI at the relation of C. N. BRIGANCE, J. W. BRIGANCE, MARY HAYNES, LEE RUSSELL, W. J. FITZMAURICE, JAMES FITZMAURICE, CATHERINE FITZMAURICE, WILLIAM HENRY FITZMAURICE, NELLIE FITZMAURICE, MARGARET FITZMAURICE, PATRICK FITZMAURICE, SALLY FITZMAURICE and MICHAEL FITZMAURICE, O. H. MOBERLY, Commissioner of Finance, Relators, v. ROBERT J. SMITH, JAMES F. FULBRIGHT, and PERRY T. ALLEN, Judges of the Springfield Court of Appeals, and JAKE HUFFMAN and ALVIN HUFFMAN. —135 S. W. (2d) 355.

Court en Banc, January 9, 1940.

*Ward & Reeves* for relators.

*C. G. Shepard* for respondents.

HAYS, J.—This is a proceeding in certiorari directed to the Judges of the Springfield Court of Appeals to quash their opinion in the case of Huffman v. Brigance, reported in 128 S. W. (2d) 639. The case under review was a suit in equity in which the plaintiffs sought to reinstate the lien of a certain deed of trust upon real estate in Pemiscot County, Missouri, the legal title to which is held by a trustee for certain of the defendants, relators here, who are heirs at law of one J. H. Brigance, deceased, the mortgagor in the instrument sought to be reinstated. The opinion of the Court of Appeals states the facts in detail. We have epitomized them.

In 1922 J. H. Brigance, being the fee simple owner of the land involved, executed a first mortgage thereon to the St. Louis Joint Stock Land Bank. In 1926 he gave a second deed of trust to the Blytheville Agricultural Credit Corporation. The following year he gave a third deed of trust to the Bank of Caruthersville, and in 1929 a fourth deed of trust to the plaintiffs. Brigance's wife joined in all of these deeds of trust and in 1929, when the fourth deed was placed on the land, the three former deeds were unpaid and constituted subsisting liens.

In 1924 Brigance obtained a policy of insurance upon his own life in the principal sum of $10,000, his wife Ikie P. Brigance being named therein as the beneficiary. In 1934, after the execution of all four of the deeds of trust mentioned and while all of them were outstanding and unpaid, Brigance, exercising his option as granted in the policy, changed the beneficiary and named as such H. V. Litzelfelner, Cashier of the Bank of Caruthersville. The policy was then deposited with the bank as further security for the indebtedness to it of Brigance.

In 1933 the bank took an assignment of the second deed of trust held by the Agricultural Credit Corporation and caused the same to be foreclosed. At the sale the bank became purchaser of the land. The respondent judges have found that the amount of the purchase price—$2000—was then charged by the bank against the account of Brigance. The bank continued to carry this charge against Brigance on its books and its officers managed the land, collecting the rents and profits therefrom, and out of them paying taxes and other expenses of management.

Ikie P. Brigance died in 1931 and J. H. Brigance in August, 1934. Neither of them left a will and both were insolvent at the time of their death. No administration was ever had upon the estate of either J. H. Brigance or his wife. Upon the death of J. H. Brigance, Litzelfelner collected from the insurance company the face amount of the above-mentioned life insurance policy, less an existing policy loan thereon. The sum thus realized was turned over to the bank and accepted by it in full satisfaction of all Brigance had owed it, including the $2000 charge against him made at the time of the purchase under foreclosure.

Thereafter the bank was placed in the hands of the State Department of Finance. The Deputy Commissioner in charge filed a petition in the circuit court, which had charge of the liquidation of the bank, in which he set out the facts in regard to the foreclosure of the second mortgage substantially as we have stated them, and also the facts in connection with the application of the proceeds of the life insurance policy to the Brigance indebtedness. He prayed for an order permitting him to execute a deed to this land to a trustee for the Brigance heirs. The order was made by the court and the deed duly executed.

Plaintiffs, then learning for the first time of these various transactions, filed this suit in equity to reinstate the lien of their fourth mortgage and to foreclose the same subject to the outstanding first mortgage. The theory upon which their bill is framed is that the bank in purchasing at the foreclosure of the second mortgage did so in behalf of the mortgagor, charging up the amount of the purchase price so paid against him and having the ultimate payment of this advance as well as its preexisting claim secured by the life insurance policy; that the bank thereby became a constructive trustee of the land so purchased for Brigance and that this foreclosure did not in equity extinguish the lien of the junior encumbrance. The trial court found in accordance with the theory of the plaintiffs and decreed that the fourth deed of trust be reinstated as a valid and existing lien subject to the original first mortgage and ordered the sale of the land upon special execution in foreclosure of this lien. The opinion here under review affirms this decree.

. In the trial court and in the Court of Appeals relators .contended that the plaintiffs were not entitled to maintain the· present suit because they had not first reduced their claim to judgment in an action at law, presumably by having administration commenced on the J. H. Brigance estate and presenting a claim to the probate court. The Court of Appeals ruled adversely to this contention and it is this ruling which relators challenge in the present proceeding. In this connection the opinion of respondent judges contains the following language:

"As a general rule, the jurisdiction of claims affecting estates of the dead is within the probate courts. But there are exceptions to this rule, and where deceased was insolvent as pleaded and proved, as in this case, and where the property has been disposed of and transferred as in the case at bar, a court of equity is the only forum at which complete relief may be obtained. . . . It is our conclusion that the court of equity did have jurisdiction to determine the issues involved. In a very recent case by the Supreme Court, C. Bewes, 'Inc., v. Buster, 341 Mo. 578, 108 S. W. (2d) 66, 70, the court said 'It is sufficient ground for relief in equity that the legal remedy is not full, complete and adequate.' [Citing cases.] In another recent case by our Supreme Court, Farmers & Traders Bank v. Kendrick et al., 341 Mo. 571, 108 S. W. (2d) 62, at page 64, we find· this language:

" 'The general rule of law is that a simple creditor cannot maintain a suit in equity to set aside a conveyance of a debtor as fraudulent until his demand has been reduced to judgment. [Daggs v. McDermott, 327 Mo. 73, 34 S. W. (2d) 46, and cases cited therein.] However, we have recognized that there are exceptions to this general rule as where the defendant is wholly insolvent and therefore it would be useless to proceed at law. [Humo v. Wright (Mo.), 274 S. W. 741; Davidson v. Dockery, 179 Mo. 687, 78 S. W. 624.] This exception apparently springs from the doctrine that equity never requires a vain act to be done and therefore when it appears that to sue at law would be impossible or unavailing, it will not be required. [State ex rel. Taaffe v. Goggin, 191 Mo. 482, 90 S. W. 379, 109 Am. St. Rep. 826.]. The remedy at law must be adequate and by this is meant that it must be clear, complete, and as practical and efficient to the ends of justice and its proper administration as a remedy in equity. [Hanson v. Neal, 215 Mo. 256, 114 S. W. 1073.]' "

█ It is insisted by the relators—and we think rightly so—that the part of our decisions in the Buster and Kendrick cases, supra, which apparently holds that in the case of an ordinary creditor's bill the requirement that the creditor must first reduce his claim to judgment at law before resorting to equity will be dispensed with where the debtor is shown to be insolvent, has been overruled by our later case of Buckley v. Maupin et al., 344 Mo. 193, 125 S. W. (2d) 820, and relators contend that the present opinion is in conflict with

the Maupin case. An examination of respondents' opinion, however, shows that their statement of the supposed rule as to insolvency, founded by them on our decisions in the Buster and Kendrick cases and opposed to the later ruling in the Maupin case, was in no wise necessary to the decision of the present cause. The result reached by the Court of Appeals in this case was a correct one and was in full conformity to our prior controlling decisions.

The Buster, Kendrick and Maupin cases belong to a special class of proceedings in equity—creditors' bills. Such bills are brought by an unsecured creditor for the purpose of setting aside some transfer or conveyance made by the debtor of legal title to his property upon the ground of alleged fraud in such transfer or for the purpose of discovering hidden assets of the debtor, and in either event subjecting the property so made available to the payment of the debt. The rules of law discussed in the three cited cases and having to do with the questions here under consideration have a particular application to creditors' bills and also apply to a somewhat similar class of proceedings known as bills for equitable garnishment.

All three of the above cited decisions hold that in the case of creditors' bills (and the same is true in some instances of bills of equitable garnishment) a plaintiff who is an ordinary unsecured creditor must sue his debtor at common law and reduce his claim in such action to judgment before seeking relief in chancery. The theoretical foundation of this rule, as we pointed out in the Maupin case, is this: one who is charged with an ordinary money indebtedness, not involving the settlement of a long and complicated account, ordinarily has a right to have the question of the existence and the amount of the debt determined by the verdict of a jury. To allow the creditor to come into a court of equity in the first instance would be to deny the debtor this right.

In all three of these cases we recognized that this rule, requiring a precedent judgment at law, was subject to certain well recognized exceptions, two of which we stated in the cited cases to be the following: (1) Those cases in which the existence and the amount of the debt are admitted by the debtor; (2) Those in which the debtor is absent from the State and not subject to the ordinary processes of law within the State, so that the bringing of an action at law against him in this State would be an impossibility. In the two earlier cases we used some language which might be construed and was construed by the Court of Appeals in the present case as recognizing a third exception based upon the sole fact of insolvency. In the Maupin case, however, we clarified our position and definitely held in accordance with what we then believed and now affirm to be the weight of authority and sounder reasoning that the fact of insolvency of the debtor alone will not excuse the creditor from first reducing his claim to judgment at law. But, as we have pointed out,

the general rule stated in our three decisions, with the exceptions corollary thereto, exists in the case of creditors' bills and in the case · of bills for equitable garnishment. None of our decisions have attempted to apply it as a general proposition applicable to all suits in equity.

We have said in Hanson v. Neal, 215 Mo. 256, 114 S. W. 1073, and more recently in Morris v. Hanssen, 336 Mo. 169, 78 S. W. (2d) 87: "The authorities point out that there are cases alone cognizable in equity and with which the law has nothing whatever to do. The jurisdiction of equity is said to be exclusive in such cases." [See also Washington University v. Baumann, 341 Mo. 708, 108 S. W. (2d) 403 (en banc).] We recognized this principle in the Buster, Kendrick and Maupin cases.

Indeed, in cases falling within this original jurisdiction of chancery, equity will grant relief even though an action at law, growing out of the same facts, might have been maintained by the plaintiff against the defendant, the remedies at law and in equity being different. [Ellenburg v. Edward K. Love Realty Co., 332 Mo. 766, 59 S. W. (2d) 625; Pratt v. Clark, 57 Mo. 189; Real Estate Savings Inst. v. Collonious, 63 Mo. 290.]

In the present case, as we have said, the plaintiffs who originally were holders of a lien of equitable nature upon the land now in suit, which lien had been apparently extinguished, seek to have it reinstated. In Hanson v. Neal, supra, we held that such a case fell within the original jurisdiction of equity and that the equity jurisdiction in such cases was independent of the jurisdiction of common law courts. Indeed from a very early date equity has assumed jurisdiction over mortgages and deeds of trust for determining the priority of their liens, for marshalling the assets of the debtor and for purposes of foreclosure, and it is only in a court of equity that the lien of such an encumbrance which has been extinguished at common law can be revived where circumstances exist requiring such revival as a matter of justice and good conscience.

The second branch of the opinion of respondent judges, which holds that the foreclosure of the second deed of trust upon the land involved did not extinguish the lien of plaintiffs' deed of trust and that plaintiffs' deed is entitled in equity to be reinstated because of the contemporaneous assignment of the life insurance policy, is not attacked in relators' petition for certiorari. While it is our duty to examine this portion of the opinion to determine whether or not it is in conflict with our prior controlling decisions, we do not find any such conflict. The facts pointed out by respondent judges and found in their opinion to be true, that the purchase price paid by the bank at the foreclosure sale was charged up against the account of Brigance and that the full balance due on said account was paid to the bank out of the proceeds of the life insurance policy, are

a clear indication that the bank in buying at the foreclosure sale acted as the agent of Brigance and that it held title thereafter as a constructive trustee for him. This, it would seem, was clearly established by the subsequent action of the Deputy Commissioner of Finance representing the bank in deeding the land to a trustee for the Brigance heirs, which deed was made after a full disclosure to the circuit court of the facts of the transaction, and in accordance with the order of said court.

The result reached by the respondent judges is therefore entirely in accordance with the controlling decisions of this court. But that portion of respondent judges' opinion which deals with the insolvency of the debtor as an excuse for not obtaining a judgment at law is in conflict with our latest expression of the rule as contained in the Maupin case; and, because of the presence in the opinion of the expressions, although they are entirely unnecessary to the decision of the case, we quash that portion of respondent judges' opinion which we have quoted above and quash our writ with respect to the remainder of the opinion of respondent judges. All concur.